Cite as 2020 Ark. 219

# SUPREME COURT OF ARKANSAS

No. CR-19-666

| | |
|---|---|
| SANDERS CARTER | Opinion Delivered: May 28, 2020 |
| APPELLANT | |
| | PRO SE APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION |
| V. | [NO. 60CR-87-63] |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE HERBERT WRIGHT, JUDGE |
| | <u>AFFIRMED</u>. |

**SHAWN A. WOMACK, Associate Justice**

Sanders Carter appeals the denial of his motion for a new trial based on postconviction DNA testing results. Carter contends that the circuit court failed to comply with statutory requirements before ruling on his motion. He also claims the circuit court erroneously ruled on the motion without conducting an evidentiary hearing. We affirm.

## I.

Over thirty years ago, Carter was convicted of rape, aggravated robbery, and burglary. *See Carter v. State*, 295 Ark. 218, 748 S.W.2d 127 (1988). He was sentenced as a habitual offender to consecutive terms of life plus forty years. *Id.* We affirmed on direct appeal. *Id.*

In 2012, Carter moved for postconviction DNA testing under Act 1780 of 2001, as amended by Act 2250 of 2005. *See* Ark. Code Ann. §§ 16-112-201 to -208 (Repl. 2016). He

sought to test for "touch DNA" on the knife found at the crime scene. The knife had been admitted into evidence at trial and was identified by the victim as the knife used during the crimes. The circuit court denied the motion without a hearing. We reversed and remanded for a hearing. *See Carter v. State*, 2015 Ark. 57, 536 S.W.3d 123. On remand, the circuit court entered a stipulated order for postconviction DNA testing. In addition to the knife, the order provided that several hairs and hair fragments would be tested for "interpretable DNA profiles" and compared with Carter's DNA.

The evidence was screened for the presence of male-specific DNA to determine whether further processing was warranted. Three samples were then subjected to STR and Y-STR DNA testing: the knife, a shaft of an apparent hair/fiber, and an apparent hair/fiber. Beginning with the knife, STR testing established that the sample contained a male contributor, but no conclusion could be made due to the limited data obtained. The sample was then tested for Y-STR DNA. Those results indicated that Carter could not be excluded as a contributor of the partial Y-STR profile found on the knife.

The sample from the shaft of an apparent hair/fiber obtained from the victim's pubic combings yielded similar results. The STR testing revealed a partial DNA profile containing a mixture of two individuals, including at least one male contributor, but the results were otherwise inconclusive. Y-STR testing was conducted on the epithelial fraction and the sperm fraction of the sample. Carter could not be excluded as a contributor of Y-STR profiles obtained from each fraction.

2

Carter's argument turns on the third sample consisting of an apparent hair/fiber from the victim's pubic hair sample. According to the STR results, the sample contained a major female contributor and at least one male contributor. Carter was excluded as a possible contributor of the major component DNA profile obtained from the epithelial fraction of the sample. Y-STR testing was conducted on the epithelial and sperm fractions of the sample. Due to the limited data obtained from the sample, the partial profile from the sperm factor was suitable only for exclusion purposes. The results found that Carter could not be excluded or included as a possible contributor of the sperm factor. However, Carter could not be excluded as a possible contributor of the partial Y-STR profile obtained from the epithelial factor of the sample.

At a July 2016 hearing, Carter's attorney informed the circuit court that testing was complete. Based on the testing results, counsel informed the court that no further relief would be sought. The postconviction matter was closed. Carter subsequently filed an unsuccessful pro se petition for writ of habeas corpus in federal district court. *See Carter v. Kelley*, No. 5:16-cv-00367, 2017 WL 4214139 (E.D. Ark. Aug. 31, 2017). The district court rejected Carter's assertions that the DNA testing results exonerated him. *Id.*

On February 4, 2019, Carter returned to the circuit court. Relying on the DNA testing results, he moved for a new trial under Arkansas Code Annotated section 16-112-208(e). The circuit court denied the motion. This appeal followed.

II.

Carter contends the circuit court erred by denying his motion for new trial because it did not follow procedural requirements within section 16-112-208(e) and did not conduct an evidentiary hearing. We ordinarily review the denial of postconviction relief for clear error. *See Isom v. State*, 2010 Ark. 496, at 5–6, 372 S.W.3d 809, 813. But the denial of a motion for a new trial under section 16-112-208(e) is reviewed for abuse of discretion. *Id.* That is because the statute provides that the court "may grant" a new trial if the DNA testing results, "when considered with all other evidence in the case . . ., establish by compelling evidence that a new trial would result in an acquittal." Ark. Code Ann. § 16-112-208(e)(3).

Section 16-112-208 contemplates three possible results from DNA testing: (1) the results are scientifically inconclusive as to the source of the DNA evidence; (2) the results establish that the petitioner is the source of the DNA evidence; or (3) the results establish that the petitioner is not the source of the DNA evidence. *See Echols v. State*, 2010 Ark. 417, at 9, 373 S.W.3d 892, 899; *see also* Ark. Code Ann. § 16-112-208(b), (c)(1), (e)(1).

Carter contends that the DNA testing results excluded him as a contributor and thus subsection 208(e) applies. That subsection provides the following:

> (1) If deoxyribonucleic acid (DNA) test results obtained under this subchapter exclude a person as the source of deoxyribonucleic acid (DNA) evidence, the person may file a motion for a new trial or resentencing.

> (2) The court shall establish a reasonable schedule for the person to file a motion under subdivision (e)(1) of this section and for the state to respond to the motion.

4

(3) The court may grant the motion of the person for a new trial or resentencing if the deoxyribonucleic acid (DNA) test results, when considered with all other evidence in the case regardless of whether the evidence was introduced at trial, establish by compelling evidence that a new trial would result in an acquittal.

Ark. Code Ann. § 16-112-208(e). "All other evidence in the case" means any evidence, whether inculpatory or exculpatory, that is relevant to a determination of whether the petitioner has established by compelling evidence that a new trial would result in acquittal. *See Echols*, 2010 Ark. 417, at 13, 373 S.W.3d at 901.

Carter contends that the circuit court should have set a schedule for the State to respond to the motion for new trial. He also argues that he was denied an opportunity to request an evidentiary hearing. Carter further claims that he should have had the right to introduce other evidence—a CODIS upload or results from a search of the Arkansas DNA databank to identify the source of the unknown DNA profile—for the circuit court's consideration to establish by compelling evidence that a new trial would result in acquittal.

Carter was excluded as the contributor of the major component of the STR DNA profile obtained from an apparent hair/fiber. This does not exclude Carter as the source of all DNA evidence in this case. Rather, it excluded Carter with respect to only one sample of evidence. *See* Ark. Code Ann. § 16-112-208(e)(1). Because Carter is not excluded as the source of DNA evidence with respect to the case, the court did not have to establish a reasonable schedule for Carter to file a motion under subdivision (e)(1) and for the State to respond to the motion. As the circuit court found in its order:

5

The majority of the samples resulted in the testing company finding that the Defendant could not be excluded as the contributor of the DNA. The testing company found that one sample was consistent with a mixture of at least two individuals including at least one male contributor and that the Defendant was excluded as a possible contributor of the major component DNA profile obtained from that sample.

The Defendant, again, asserts that these results completely exonerate him. This is not the case. The Defendant's DNA is linked to sperm found in the pubic combings of the [victim].

Even if the testing results had excluded Carter, the court was not required to grant a new trial. The court may grant a motion for new trial if the testing results, when considered with all other evidence in the case, establish by compelling evidence that a new trial would result in an acquittal. *See* Ark. Code Ann. § 16-112-208(e)(3). Other evidence in the case was more than sufficient to support Carter's conviction. Carter entered the victim's home through a kitchen window off a deck. *See Carter*, 295 Ark. at 220, 748 S.W.2d at 127. He threatened to kill her with a knife, then searched her purse for money, raped her, and beat her. *Id.* Carter threatened that if she called police, he would come back to her home and cut her throat. *Id.* The assault lasted approximately 45 minutes. *Id.* The victim ignored Carter's threat and called police. *Id.* She provided a description of her assailant. *Id.* A few weeks later, she heard someone on her deck and called police. *Id.* Carter was apprehended on the deck and arrested. *Id.* Later that day and again at trial, the victim identified Carter as her assailant. *Id.*

The circuit court rejected Carter's assertion that the DNA results exonerated him and noted the testing results linking Carter to sperm found in the victim's pubic hair

combings. The circuit court found that the evidence presented by Carter failed to place his guilt or conviction in question. It further noted that the victim's testimony was credible proof that Carter was correctly identified by the victim. We do not find that the circuit court abused its discretion by denying Carter's motion for new trial.

As a final point, Carter contends he was entitled to an evidentiary hearing under subsection 16-112-208(e). That provision does not require a hearing. We have, however, held that subsection 16-112-205(a) applies to motions for a new trial. *See Echols*, 2010 Ark. 471, at 15, 373 S.W.3d at 902. Under that provision, the court must conduct an evidentiary hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief[.]" Ark. Code Ann. § 16-112-205(a). The circuit court held that Carter's petition was without merit and that the evidence presented failed to place his conviction or guilt into question. There is no basis to disturb that holding. Accordingly, an evidentiary hearing was not required.

Affirmed.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** The circuit court erred by misinterpreting the DNA report and not granting an evidentiary hearing to Carter. Furthermore, on this record, it was error not to order scientific testing of the material that yielded inconclusive DNA results. I cannot ignore that the report indicates that either nuclear or mitochondrial testing may yield more definitive results.

7

In the case before us, five samples were tested for DNA. Sample CCB1537-0304-E03a, a pubic hair sample excludes Carter. Sample CCB1537-0304-E01 is a knife; samples of apparent hairs and fibers are CCB1537-0304-E02c and CCB1537-0304-E03c; samples that include the underside of coverslip, top side of slide, inside of petri dish used for xylene soak of the pubic hairs and pubic combings are CCB1537-0304-E02b and CCB1537-0304-E03b; final sample includes CCB1537-0304-E02a is the cellular pellet from xylene wash and CCB1537-0304-E02d apparent human hair tested together are all found to be inconclusive. The report states which samples might generate more conclusive results with further testing.

The report states that due to limited DNA on the knife, no conclusion can be made. The Y-STR[1] profile that was obtained from the sperm fraction cannot exclude Carter, but nuclear DNA testing might yield a more definitive result. Another sample might yield conclusive results if tested using mitochondrial DNA testing. These are clear examples of the definition of inconclusive test results. At a minimum, Carter is entitled to an evidentiary hearing under § 16-112-205.

Our scientific-testing statute contemplates three outcomes after testing and directs the circuit court to respond accordingly. Ark. Code Ann. § 16-112-208. The relevant subsections to consider under Ark. Code Ann. § 16-112-208 are as follows:

---

[1]The Y male chromosome. A Y-STR profile was obtained from sample CCB1537-0304-R04 (Sanders Carter).

8

(b) If the deoxyribonucleic acid (DNA) test results obtained under this subchapter are inconclusive, the court may order additional testing or deny further relief to the person who requested the testing.

(e)(1) If deoxyribonucleic acid (DNA) test results obtained under this subchapter exclude a person as the source of deoxyribonucleic acid (DNA) evidence, the person may file a motion for a new trial or resentencing.

Ark. Code Ann. § 16-112-208(b) & (e)(1).

Of the five DNA samples tested, one excluded Carter, the remainder were either indeterminate or inconclusive. While I am mindful that § 16-112-208 contains what appears to be permissive language with regard to ordering additional testing, that decision must be made in accordance with the stated object of the General Assembly when it enacted the scientific-testing statute. The purpose of Act 1780 of 2001 updates the mission of the criminal justice system, which is to punish the guilty and to exonerate the innocent. The General Assembly further finds that Arkansas laws and procedures should be changed in order to accommodate the advent of new technologies enhancing the ability to analyze scientific evidence. As always, we must and should assume that the courts act in a manner that is consistent with the ends of justice. Although it goes without saying, the State has no interest in imprisoning the innocent man.

The term "inconclusive" in section 16-112-208(b) is not ambiguous when it refers to DNA test results that are scientifically inconclusive. This court has previously found:

> The statute's plain language provides that the court may order additional testing or deny further relief "[i]f the deoxyribonucleic acid (DNA) test results obtained under this subchapter are inconclusive." Ark. Code Ann. §

9

16-112-208(b). . . . However, nothing in section 208(b) requires the test results to be conclusive as to the petitioner's claim of actual innocence.

*Echols v. State*, 2010 Ark. 417, at 9, 373 S.W.3d 892, 899. As noted previously, four of the five DNA samples are inconclusive. The report identifies samples that might generate more conclusive results with further testing. The report states that due to limited DNA on the knife, no conclusion can be made. The Y-STR profile that was obtained from the sperm fraction cannot exclude Carter, but nuclear DNA testing might yield a more definitive result. Another sample might yield conclusive results if tested using mitochondrial DNA. These are clear examples of the definition of inconclusive test results. At a minimum, Carter is entitled to an evidentiary hearing.

The majority's assertion that Carter is not entitled to an evidentiary hearing because section 16-112-208 does not give him that right is disingenuous in the extreme. While it may be true that section 16-112-208 does not speak about evidentiary hearings, section 16-112-205 clearly does. In *Echols*, this court noted that Echols was entitled to an evidentiary hearing, as required under this section, on a motion for a new trial, brought under Arkansas DNA-testing statutes, sections 16-112-201 to 16-112-208. Section 16-112-205(a) states: "Unless the petition and the files and records of the proceeding *conclusively show that the petition is entitled to <u>no relief</u>, the court shall promptly set an early hearing* on the petition and response, promptly determine the issues, make the findings of fact and conclusions of law; and either deny the petition or enter an order granting the appropriate relief." (Emphasis added.)

10

When the statute provides that DNA conclusively links the defendant to the crime, he is not entitled to relief. However, the majority's recitation of this alleged fact is simply wrong. The report says it is inconclusive. "A partial Y-STR profile was obtained from the sperm fraction (SF) of sample CCB1537-0304- E02c. The individual associated with sample CCB1537-0304-R04 (Sanders Carter) *cannot be excluded* as a possible contributor of the partial Y-STR profile obtained from the sperm fraction (SF) of sample CCB1537-0304-E02c." (Emphasis added.) Under section 16-122-205, the circuit court is required to have a hearing. The legislature intentionally used the term "shall" in reference to granting the hearing. To deny Carter a hearing would change the legislative intent of the statute.

Carter was not conclusively found to be the contributor of the DNA. It is in error to deny Carter a hearing and not order additional testing before the court makes any findings of fact or conclusions of law. Carter is entitled to an evidentiary hearing. I would grant his motion.

*Sanders Carter*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.